# IN THE OREGON TAX COURT

## UMATILLA COUNTY ASSESSOR
*v.*
## DEPARTMENT OF REVENUE
## J. R. SIMPLOT COMPANY,
*Intervenor*
(TC 2999)

Jacki Haggerty-Foster, Umatilla County Counsel, represented plaintiff.

James C. Wallace, Assistant Attorney General, Department of Justice, represented defendant.

Steven H. Corey, Corey, Byler, Rew, Lorenzen & Hojem, Pendleton, represented intervenor.

Decision for plaintiff rendered January 17, 1992.

**CARL N. BYERS, Judge.**

Defendant denied jurisdiction of plaintiff's appeal from an order of the board of equalization as untimely. On

appeal to this court, plaintiff claims good and sufficient cause for being late. The taxpayer, J. R. Simplot Company (Simplot), intervened. The parties submit the case on stipulated facts and written memorandum.

Simplot owned real property in Umatilla County and appealed its assessed value as of January 1, 1988, to the Umatilla County Board of Equalization (board). The board held a hearing on June 30, 1988, to consider Simplot's appeal. At the hearing the board orally stated its decision. About mid-September, plaintiff discovered that he had no record or recollection of receiving a signed order from the board on Simplot's appeal. Plaintiff inquired of the clerk of the board and the clerk furnished plaintiff with a copy of the order. The copy showed only the chairman's signature followed by the clerk's initials. The copy did not show a mailing date. The original order had been mailed to Simplot on July 13, 1988. The original order contained two signatures; first was the chairman's name (followed by the clerk's initials) and the second a member.

Immediately after learning these facts, plaintiff appealed to defendant. Defendant held a supervisory jurisdiction hearing on May 23, 1990. Defendant issued its opinion and order July 10, 1990, denying plaintiff's appeal on the grounds there was no basis for jurisdiction.

### ISSUE

The issue is whether defendant had jurisdiction to hear plaintiff's appeal. There are two possible grounds: (1) the normal or regular appeal procedure under ORS 305.275(2) and (2) the "extraordinary remedy" of defendant's supervisory authority under ORS 306.115.

In resolving this dispute it is helpful to first discuss what should occur under the statutory scheme.

Under the regular appeal procedure (ORS 305.-275(2)), an assessor aggrieved by an order of a board of equalization can appeal to the Department of Revenue. The right to appeal is limited in time. The relevant provision of ORS 305.280(3) provides (1987 Replacement Part):

"[A]n appeal to the director or the department * * * from an order of a county board of equalization shall be filed within

30 days of the * * * date of mailing of the order *to the taxpayer* * * *." (Emphasis added.)

The mailing of the notice of the order to the taxpayer is governed by ORS 309.110(1) (1987 Replacement Part). That statute specifies that:

"The action of the board upon every petition * * * shall be entered of record by *formal order*. A copy of the order as to each petition shall be sent, by registered or certified mail, to the petitioner at the post-office address given in the petition. A copy of the order shall be sent to the person in whose name the property is assessed who responded to a notice sent or given under ORS 309.090. * * * A *copy of all orders shall be delivered to the assessor not later than five days after the adjournment of the board meetings*. The orders of the board shall specify what changes shall be made in the roll, if any, and shall direct the assessor to make them." (Emphasis added.)

■■ The court notes that a "formal order" implies a written order signed by members of the board. *Noyes v. Dept. of Rev.*, 7 OTR 325 (1978). If an order is not signed, it does not constitute a "formal order" as required.[1] By specifying that a copy must be furnished to the assessor within five days after the adjournment of the board meetings, ORS 309.110(1) implicitly requires orders to be signed within five days. If the copy furnished to the assessor does not show the order was signed, the assessor is not authorized or obligated to change the roll.

ORS 309.110 does not specify a time by which the copy must be mailed to the taxpayer. However, defendant's administrative rule does. OAR 150-309.110(1)-(A) provides:

"All copies of orders which are mailed to petitioners must be mailed no later than 5 days after the board has adjourned. Orders should be mailed the same day as delivery is made to the assessor."

This rule correctly links the sending of notice to the taxpayer with the delivery of the copy to the assessor. This link is vital since, as this case illustrates, when it is broken the system falters.

---

[1] The clerk of the board should retain in the board's records the original signed order. The statute clearly states that *copies* are to be sent to others.

■ The statutes assume the assessor is aware of the date of mailing of the copy of the order to the taxpayer. This is a reasonable assumption since the assessor's copy of the order should show the date of mailing to the taxpayer. It is also reasonable to conclude that the appeal period for the assessor under ORS 305.280(3) runs from the date a copy of the order is mailed to the taxpayer.

Having reviewed the procedures that should be followed, it is now necessary to determine what did occur. The first question is whether the assessor received a copy of the order that was to be delivered to him. Although the stipulation of facts leaves much to be desired, the court finds that the assessor did not receive the required notice. This case appears to be an example where expediency had eroded the exactness required by the law. While it may be expedient to furnish the assessor an unsigned, undated "work" copy, it is not correct.[2]

Under the stipulated facts, even if the court assumes the clerk delivered a copy to plaintiff within one to two days after the board hearing, it is unlikely that the copy was of a signed order. Consequently, it was not a copy of a "formal order" of the board. Also, if so delivered, it could not have been dated July 13, 1988. That date was still ten to eleven days in the future. In short, whatever may have been delivered to the assessor, it was not the document required by the statute. When the clerk of the board did mail the signed order to the taxpayer on July 13, 1988, she did not send plaintiff a copy. If she had, plaintiff would not have had to inquire in mid-September. Again, it is of concern to the court that the copy furnished to plaintiff in mid-September was not a copy of the formal order showing the signatures of the board members and the date of mailing to the taxpayer.

---

[2] If the statutory scheme is to work, it must be administered by government agents with at least as much exactness as the government expects of its ill-informed taxpayers. Partial performance, ambiguous acts or misleading information invariably cause problems. For example, the copy of the board of equalization order attached to the stipulation contains the following form language pertaining to appeal rights:

"You may appeal this decision of the board of equalization to a higher authority. You may appeal to either the Department of Revenue or Oregon Tax Court."

This statement is misleading. Appeals from orders of the board of equalization must be to the Department of Revenue unless they fall within the small claims jurisdiction of this court. This taxpayer, Simplot, could not appeal to the Oregon Tax Court because the amount involved exceeds the small claims jurisdiction.

The court finds that plaintiff was not furnished a copy of the formal board order as mandated by ORS 309.110(1). The court further finds this failure constitutes good and sufficient cause for plaintiff's failure to appeal within the time limits set forth in ORS 305.280(3).

Defendant erred in finding that plaintiff failed to establish good and sufficient cause under ORS 306.115. This matter will be remanded to the defendant with instructions to assume jurisdiction under ORS 306.115 and to conduct a hearing on the merits. Costs to neither party.